Paul T. BERNARD; Charles W. Pannhorst, Jr.; Keith D. Mutschler; and Arthur Aliperti, Plaintiffs–Appellants,

v.

ROCKWELL INTERNATIONAL CORPORATION, Defendant–Appellee.

No. 87–4154.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 28, 1988.

Decided March 10, 1989.

Rankin M. Gibson (argued), Lucas, Prendergast, Albright, Gibson & Newman, Columbus, Ohio, for plaintiffs-appellants.

Thomas V. Williams, Porter, Wright, Morris & Arthur, Columbus, Ohio, Wayne A. Schrader (argued), Gibson, Dunn & Crutcher, Washington, D.C., for defendant-appellee.

Before KENNEDY, GUY and RYAN, Circuit Judges.

RYAN, Circuit Judge.

Plaintiffs-appellants appeal a district court order granting partial summary judgment dismissing several consolidated claims they brought against their former employer, Rockwell International Corporation ("Rockwell"). Appellants claimed that Rockwell 1) terminated their employment in breach of their employment contracts, 2) fraudulently induced them to enter into those contracts, and 3) owed them vacation pay. We conclude that the material facts considered by the district court in granting the defendant's motion for summary judgment would not have allowed a jury reasonably to find for the plaintiffs on any of the foregoing claims. Accordingly, the district court's order granting summary judgment is affirmed.

## I.

Paul T. Bernard, Charles W. Pannhorst, Jr., Keith D. Mutschler, and Arthur Aliperti were formerly employed by Rockwell at its Columbus, Ohio facility. When they were hired from other companies, each was issued, and signed, a "Report for Work Notice and Employment Agreement." That agreement provided, in pertinent part:

1. Employment Certification. I realize that it is my duty to perform my job faithfully and *agree that my employment shall be in accordance with Com-*

*pany policies, rules and regulations,* that may be posted or published at any time. I understand that changes in the type of work, hours, rates of pay, shifts, days off and total hours worked each day or week may be made at the discretion of the Company; and are not within the control of the Employment Section. I also realize that all employees except those reinstated are subject to a probationary period following hire. [Plaintiffs' emphasis].

\* \* \* \* \* \*

5. Agreement Regarding Employment. *It is agreed that the employment of the undersigned by Rockwell is at the will of either party* and may be terminated on notice to the other as prescribed by applicable Rockwell procedures. Other arrangements, agreements or understandings, if any, regarding the period of the undersigned's employment, except any letter agreement regarding relocation expenses, are hereby cancelled and superseded. [Defendant's emphasis].

Each plaintiff later participated in an orientation session at which Rockwell gave each a copy of its Employee Handbook, a copy of the Plant Rules, and information concerning its Standard Operating Manual. In relevant part, the handbook provided:

### Standards of Conduct

All organizations have guidelines of personal conduct to maintain and safeguard the interests of all members of the group.

The Company's Plant Rule System provides for a standard of business conduct with rules that are designed to be both manageable and equitable. The administration of employee discipline is a management responsibility and your supervisor will apply these Company rules in a manner that is fair, consistent, and in accordance with the Company's discipline philosophy. This philosophy emphasizes progressive discipline, with the objective of being corrective rather than punitive. Under the Plant Rule System, discipline for rule violations is assessed in proportion to seriousness of the infraction. Repetitive violations bring stiffer penalties including disciplinary time off and/or possible discharge action. The system includes a method whereby good behavior reduces an employee's previous discipline charges. Specific rule violations are documented by the issuance of either a Warning Notice or a Supervisor's Personnel Memorandum.

The rules of personal conduct are posted throughout the Company's premises or are available from your supervisor.

### Attendance and Job Performance

The profitable operation of the company depends to a great extent on the regular attendance of our employees. A serious burden is placed on the supervisor in planning work operations and schedules when the supervisor has no assurance that the employees will regularly report to work and with disruptions caused by having to shift employees around to cover absentees. Therefore, attendance is an essential element of job performance and is an important factor in continuing your employment with the Company. All employees are required to report unplanned absences from work, including tardiness of absence for an entire workshift. If you know you will be absent, make the necessary arrangement with your supervisor in advance. This will make planning easier and reduce the pressures on your fellow employees. If you do not know in advance, call your supervisor at the beginning of the work shift.

Ernest L. Sullivan, Manager of Employee Relations at the Columbus, Ohio facility stated in a sworn declaration that while Rockwell intended to follow these policies set out in the employee manuals, it did not intend the policies to modify the express contract provisions to which both parties had assented. Sullivan stated that Rockwell published the handbook several years before any of the plaintiffs began their employment with the company.

Plaintiffs-appellants also based their claims for pro rata vacation pay on the company policies. The Employee Handbook stated:

You are encouraged to take advantage of your earned vacation by taking time off from work. Vacations are of value to you and the company in terms of morale, health, and efficiency. You are eligible for 80 hours of vacation after completion of your first year of employment. This vacation is increased to 120 hours following the completion of 10 years of continuous service, and to 160 hours following the completion of 20 years of continuous service. Every attempt is made to accommodate company requirements and production schedules in the scheduling of vacations—the company may reschedule vacation time if your skills are needed on a critical operation. Vacations may be taken in various forms, either continuous, in partial weeks, or a day at a time, as long as it does not unduly disrupt the continuity of your work function. You are required to take the full amount of vacation within your current anniversary year unless, in special situations only, approval is granted to carry earned vacation hours beyond your anniversary date.

Rockwell asserted, however, that employees earn paid vacation, not pro rata, but "upon completion of each year." Sullivan stated that according to the applicable provision of the company's Standard Operating Manual, F–4.02.1, also available to the employees, "[v]acation benefits for partial years of service are not paid upon termination of employment on a pro rata basis if the employee is terminated for any reason other than inability to meet company medical standards or resigns other than to enter active service in the armed forces or retire under the provisions of a company retirement plan."

Rockwell fired Aliperti, Mutschler, and Pannhorst on January 24, 1985 because they failed to attend a management status meeting on January 18, 1985. Bernard submitted a letter of resignation on January 17, 1985, intending it to take effect April, 1985. Rockwell, however, accelerated his termination date making it effective immediately. On March 12, 1985, the four men initiated a lawsuit in Ohio state court, each seeking in excess of $450,000, alleging wrongful discharge, breach of promise to pay overtime, failure to pay accrued vacation time, and misrepresentation by Rockwell. Rockwell properly removed the suit to federal court in April and answered the complaint in May. Approximately one year later, on March 31, 1986, Rockwell moved for summary judgment based upon the complaint, depositions, answers to interrogatories, employment contracts, and employee handbooks. On October 8, 1987, the trial court granted summary judgment on all claims except those for unpaid overtime. The plaintiffs dismissed their claims for overtime pay in order to appeal the granting of summary judgment with respect to their other claims.

## II.

### Employment at-will

Each plaintiff, at time of hire, signed a written "Employment Agreement" which expressly provided that it was "agreed that the employment of the undersigned by Rockwell is at the will of either party and may be terminated on notice to the other as prescribed by Rockwell procedures." Absent a statutory restriction, Ohio law recognizes no exceptions to the rule that an employment contract terminable at will may be terminated at any time, for any reason, or for no reason. *See Peterson v. Scott Constr. Co.*, 5 Ohio App.3d 203, 205, 451 N.E.2d 1236 (1982), and cases cited therein. It is difficult to imagine how the plaintiffs and Rockwell could have stated any more clearly that their agreement was for a contract of employment terminable at will, and plaintiffs offered no evidence to indicate that they did not understand the terms of their express contract. Rather, they urge that an implied-in-fact contract should prevail over the express "at-will" employment contract.

Ohio law and an increasing number of jurisdictions have indicated that in employment-at-will cases:

[T]he employer's promulgation of employment manuals or employer handbooks, or other writings styled "personnel policies and practices," can create contractual rights which the employer

may not abridge without incurring liability.

When such oral or written modifications of the original employment contract satisfy the paradigm elements essential to contract formation—*i.e.*, offer, acceptance, consideration—binding obligations arise.

*Helle v. Landmark, Inc.*, 15 Ohio App.3d 1, 8, 472 N.E.2d 765 (1984) (citations omitted).

But, the specific issue in *Helle* was not the ability to terminate at-will, but the existence of a severance pay policy. That court found that through both conversation and a written policy the employer had stated to employees that they should not quit the troubled company because they would be eligible for substantial severance pay if they remained longer. Based on these representations the plaintiffs stayed with the company, thereby binding it to a new contract. That case did not involve the ability to terminate.

*Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980), is Michigan law and therefore not binding in this Ohio case. But plaintiffs argued *Toussaint* and *Helle* relied on its reasoning, so we address it. Whatever can be said for *Toussaint* as the doctrinal progenitor of today's burgeoning volume of employment rights litigation in this circuit, it is clear that it did not involve, as this case does, an express written employment contract; rather, in that case, Blue Cross and Blue Shield of Michigan hired Mr. Toussaint in an oral agreement *for an indefinite duration.* Michigan law would normally have interpreted this as an employment at-will situation. But a company officer indicated through oral representations at the time of hiring that the employees would not be fired if they were performing satisfactorily. In addition, a supervisor's manual, which was given to Mr. Toussaint at the time of hiring, indicated that company policy was "to treat employees leaving Blue Cross in a fair and consistent manner and to release employees for just cause only." 408 Mich. at 617, 292 N.W.2d 880. Based on those representations and finding no inconsistent represen-

tations *Toussaint* concluded that a jury could reasonably have found that employment only terminable for cause. But *Toussaint* does not indicate that employers are always *contractually* bound by employee manuals. For example, if employers seek to defeat claims by employees that an at-will employment relationship evolved into one terminable only for cause, they may "requir[e] prospective employees to acknowledge that they serve[] at the will or pleasure of the company...." 408 Mich. at 612, 292 N.W.2d 880.

Requiring such acknowledgement is exactly what Rockwell did in this case. The express employment at-will language of paragraph 5 of its contract, entitled "Agreement Regarding Employment," distinguishes this case from those appellant cites. Moreover, the language in paragraph 1 of the "Report for Work Notice and Employment Agreement" that appellants emphasize in support of their argument that the contract incorporated all Rockwell policies, rules, and regulations does not purport to bind Rockwell to those policies, only the employee. In all events, a jury could not reasonably have concluded that the parties intended a three-year-old handbook of company policies and goals to modify an express provision of a written employment contract signed by the parties, indicating that employment was at-will. In *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453 (6th Cir.1986), this court, applying common law principles, concluded that Michigan courts would not imply a contract that would directly conflict with an express contract absent a showing that the parties intended contractual modification. More recently, in *Nora v. Carrier Corp.*, 861 F.2d 457 (6th Cir.1988), this court affirmed summary judgment that permitted at-will discharge pursuant to the express terms of an employment agreement despite allegations that " 'the statements contained in Defendant's policy, procedures, standard practice, appraisals, and past history of operation create[d] express contracts of employment.' " *Id.* at 459. Appellants cited authorities do not indicate that on these very similar facts Ohio courts would rule differently.

*Pro rata vacation pay*

■ The provision upon which plaintiffs rely for their claim that Rockwell owes them pro rata vacation pay indicates that eligibility exists "after completion" of one year of employment. In other words, no one is entitled to a paid vacation during the first year of employment but is entitled, during the second year, to take the 80 hours they previously accrued. Upon starting a third year employees would be entitled to the 80 hours accrued as a result of successful completion of their second year. The evidence before the district court indicated that Rockwell always interpreted its policy in that fashion. Because the policy is not ambiguous and was not rendered ambiguous by the company's *consistent* interpretation, plaintiffs cannot now claim that, having failed to complete their second year, they are entitled to vacation pay pro rata.

*Misrepresentation, Promissory Estoppel*

■ *Klott v. Associates Real Estate,* 41 Ohio App.2d 118, 120–21, 322 N.E.2d 690, 692 (1974), indicates that in Ohio recovery for fraud requires:

> actual or implied representations or concealment of a matter of fact which relates to the present or past, and which is material to the transaction, made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; with the intent of misleading another into relying upon it; and reliance upon it by the other person with a right to so rely; with resulting injury as the consequence of such reliance.

In this case, the district judge found that:

> The plaintiffs have not produced any evidence showing that Rockwell intended to mislead them. Additionally, it is undisputed that plaintiffs did not learn of the vacation and discipline policies until they received their employee handbooks, which was after they arrived in Ohio. Therefore, they could not have relied on these representations on deciding to move to the Columbus area. Since plain-

tiffs have failed to produce evidence in support of these essential elements of their claim, defendant is entitled to summary judgment on these counts.

These findings were not disputed. They indicate that the plaintiffs' fraud claims are legally insufficient.

■ On appeal, although not in their complaint, appellants raise the issue of promissory estoppel. They cite *Mers v. Dispatch Printing Co.,* 19 Ohio St.3d 100, 483 N.E.2d 150 (1985), apparently for the proposition that under an estoppel theory it matters not that the employees learned of the policies *after* they agreed to employment. That would be a novel estoppel theory indeed; unfortunately *Mers* is nothing but a traditional estoppel case. Promissory estoppel theory requires detrimental reliance. *Mers,* 483 N.E.2d at 154; 1 Restatement of Contracts 2d, § 90. Appellants' offer no evidence that they forewent other employment opportunities or anything else *after* learning of the "promises" they allege Rockwell made through its Benefits Handbook. Certainly Rockwell gained their services, but services for which it previously contracted with them, and for which it compensated them. Concededly, each of the plaintiffs left another job to go to Rockwell, but none of them left a job based on the alleged misrepresentations made in the Employee Handbook, because they discovered the handbook only after leaving their prior jobs, agreeing to Rockwell's employment contract, and moving to Columbus, Ohio.

AFFIRMED.