Edward **ALMADA** and Mary **Almada, Plaintiffs,**

v.

**ALLSTATE INSURANCE CO., INC., Defendant.**

**No. CV 98–73 TUC JMR.**

United States District Court, D. Arizona.

April 11, 2000.

---

7. *See* INS' Opposition, docket 12 at p. 2.

8. *Id.* at pp. 2–3.

Karl E. MacOmber, Russo Cox & Russo PC, Tucson, AZ, for plaintiffs.

Floyd P. Bienstock, Lisa Morganstern Bickel, Elizabeth Anne Schallop Call, Steptoe & Johnson LLP, Phoenix, AZ, for defendant.

## ORDER

ROLL, District Judge.

This order addresses Defendant Allstate Insurance Co., Inc.'s (Allstate) Motion for Summary Judgment on a breach of contract claim brought by Plaintiffs Edward Almada (Almada) and his wife. Because Almada was an at-will employee who was lawfully terminated, Allstate is entitled to summary judgment. Even assuming good cause for termination was required, there is no genuine issue of material fact regarding Allstate's good-faith belief that Almada engaged in sexual harassment.

### Procedural Background

On April 27, 1998, Plaintiffs filed their second amended complaint. Allstate filed a motion to dismiss, which the Court granted in part and denied in part, dismissing all of Plaintiffs' claims except for their breach of contract claim. After numerous discovery disputes were resolved, Allstate filed a Motion for Summary Judgment.

### Factual Overview

The uncontroverted evidence establishes that 1) Almada began working at Allstate in 1967, 2) from February 1996 to April 1996, then 22–year old Stephanie Wilson was his secretary, 3) from May 1996 to October 1996, then 19–year old Jennifer Anderson was his secretary, 4) on October 7, 1996, Anderson reluctantly confirmed to Allstate that Almada had sexually harassed her after Allstate was contacted by Anderson's boyfriend about Almada's alleged overtures, 5) Almada occasionally hugged Anderson, 6) Almada gave Anderson a dress as a gift, and 7) Allstate had Corporate Security investigate the complaint.

Anderson informed the investigator of many other alleged incidents of harassment by Almada, including outright solicitation of sex. Almada denies these allegations. Anderson asserts that these incidents caused her boyfriend to complain to Allstate and compelled her to seek a transfer.

During Corporate Security's investigation of the Anderson matter, it learned of alleged sexual harassment by Almada against Stephanie Wilson, a former secretary to Almada. John Foxworthy, Wilson's employer after Almada terminated her, had previously informed an Allstate representative that Wilson had reported to him that she had been sexually harassed by Almada. When contacted, Wilson confirmed that Almada had sexually harassed her and stated that he had terminated her for rebuffing his advances. Almada also denies Wilson's allegations.

### Discussion

Almada argues that he could only be terminated for good cause and that Allstate is not entitled to summary judgment because factual issues exist as to whether he actually engaged in sexual harassment. Allstate argues that summary judgment should be granted because Almada was an at-will employee and could be discharged

without good cause. Alternatively, Allstate argues that even if Almada was not an at-will employee, no genuine issue of fact exists as to Allstate's good cause to terminate Almada based upon its reasonable, good-faith belief that Almada had violated the company's policy against sexual harassment.

### Summary Judgment Standard

Summary judgment is proper where no genuine issue as to any material fact exists and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The initial burden rests on the moving party to point out the absence of any genuine issue of material fact. Fed.R.Civ.P. 56(a); *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Once satisfied, the burden shifts to the opponent to demonstrate through production of probative evidence that an issue of fact remains to be tried. 477 U.S. at 323–24, 106 S.Ct. 2548. The Court must accept the non-movant's evidence as true and view all inferences in the light most favorable to the non-movant. *Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.1987).

### At–Will Employment

The parties agree that if Almada was an at-will employee, Allstate could terminate his employment based upon the allegations against him.

■ On April 30, 1967, Almada and Allstate entered into an "Allstate Agent Compensation Agreement" which stated:

> Either [Almada] or Allstate have the right to terminate this agreement upon mailing to the other, at his or its last known address, written notice of termination.

(Defendant's Statement of Fact ("DSOF"), Exhibit B, at 9).

Although the parties agree that Almada's original contract provided for at-will employment, Almada maintains that his employment contract was subsequently modified to require good cause for termination.

■ Policy manuals, oral representations, and employee handbooks may transform an at-will employment contract by adding implied-in-fact contract terms. *See Huey v. Honeywell, Inc.*, 82 F.3d 327 (9th Cir.1996); *Wagner v. City of Globe*, 150 Ariz. 82, 722 P.2d 250 (1986). Determining whether an employment contract is transformed by an employee handbook or policy manual from an at-will arrangement is generally a question of fact. *See Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 710 P.2d 1025 (1985); *Leikvold v. Valley View Comm. Hosp.*, 141 Ariz. 544, 688 P.2d 170 (1984). Evidence relevant to this inquiry "includes the language in the personnel manual, as well as the employer's course of conduct and oral representations regarding it." *Huey*, 82 F.3d at 331.

Almada submits three excerpts from a human resources manual and a personnel handbook in support of his argument that personnel manuals converted his employment status from at-will to good cause: 1) Section 5: Sexual Harassment, Human Resources Policy Manual, January 1, 1993; 2) Section 4: Allstate Initiated Terminations, Human Resources Policy Manual, September 29, 1995; and 3) Section 5: Agent Review Board, Agents Procedure Manual, February 1, 1992.[1] The Allstate

---

1. The section entitled "Agent Review Board" was intended to "allow, upon formal request, an appeal to the Agent Review Board, for employee agents whose employment is involuntarily terminated, regardless of length of service." (Plaintiffs' Statement of Facts, Exhibit C). The Agent Review Board, however, plays no part in deciding whether termination is appropriate. Rather, the "only duty of the

policy manual excerpts relied upon by Almada, however, did not change his employment from at-will to for cause.

The "Sexual Harassment" section of the Human Resources Policy Manual states in part that "[i]t is the Company's policy to maintain a working environment free from discrimination and sexual advances or harassment which may affect an employee's terms or conditions of employment." (Opposition to Summary Judgment, Appendix; DSOF, Exhibit C, Attachment 1). Rather than implementing a progressive disciplinary policy, this section instructs Allstate employees in the reporting and investigating of sexual harassment complaints. It does, however, state that "[i]ncidents of so serious a nature as to suggest immediate or subsequent termination must be handled through the established Allstate Initiated Termination procedure." (Id.).

The "Allstate Initiated Terminations" section contains a category entitled "Conduct Leading to Immediate Termination." (Plaintiffs' Statement of Facts, Exhibit C). It states that "[c]ertain situations warrant a departure from the normal procedures. Following are examples of acts that could result in immediate termination. The list is not all inclusive." (Id.). The list of situations includes dishonesty, illegal acts, and harassment based on sex. (Id.). Almada asserts that by listing specific conduct which result in termination, Allstate altered his at-will status to one of good cause. The record, however, shows otherwise.

The 1967 written contract between Almada and Allstate stated that "this agreement between you and Allstate states the basis of your compensation and the other terms and conditions of your employment as an Allstate agent." (DSOF, Exhibit B,

at 10). It also stated that "this document contains the whole agreement between you and Allstate and it shall not be altered or amended except by an agreement in writing signed by you and by Allstate's authorized manager." (DSOF, Exhibit B, at 10). Where the written contract "clearly and unambiguously indicates that the Agreement was meant to cover the entire employment relationship" and the contract creates an at-will arrangement, summary judgment is appropriate. *See, e.g., Goodman*, 891 F.Supp. at 509.

Almada conceded in his deposition that there have been many written amendments to his employment agreement, and that none of them provided that he could be fired only for good cause. (DSOF, Exhibit A, at 45–46). Attachments to Plaintiffs' Opposition to Motion for Summary Judgment included numerous written amendments to the 1967 contract. (Opposition to Motion for Summary Judgment, Exhibit B).

■ Although neither party has submitted a complete handbook from any time during the duration of Almada's employment, at least one Allstate Human Resources Policy Manual contained a disclaimer. Clear and conspicuous disclaimers "instill no reasonable expectations of job security and do not give employees any reason to rely on representations in the manual." *Leikvold*, 141 Ariz. at 548, 688 P.2d at 174. The disclaimer noted that the Human Resources Policy Manual "is not a statement of contractual rights" and that "[e]mployment at Allstate is for an indefinite period and terminable at the will of either Allstate or an employee with or without notice and with or without cause." (Defendant's Supplemental SOF, Exhibit K). This disclaimer was promi-

---

Agent Review Board [is] to review the facts and the reasons for the agent termination and

to make recommendations based upon that review." (*Id.*).

nently listed in the first section of a previous Human Resources Policy Manual. (*Id.*).

This action is distinguishable from court decisions finding that policy manuals and employee handbooks have altered the at-will status of employees. Compare *Leikvold*, 141 Ariz. 544, 688 P.2d 170; *Wagenseller*, 147 Ariz. 370, 710 P.2d 1025.

The plaintiff in *Leikvold* submitted the entire 22–page employee handbook in opposition to the employer's summary judgment motion. The company handbook included sections on "the complaint and grievance procedure, the termination procedure, and 'general rules' regarding punctuality, smoking, soliciting, and safety." 141 Ariz. at 547, 688 P.2d at 173. Finally, the section on employee dismissals noted in part, "[g]ross violations of conduct and hospital rules are grounds for immediate dismissal and will cause an employee to forfeit the usual two weeks notice. . . . No notice or terminal pay is given for the following. . . ." 141 Ariz. at 547, 688 P.2d at 173.

The company handbook in *Wagenseller* contained a progressive disciplinary policy which listed 32 separate grounds for termination. 147 Ariz. at 382, 710 P.2d at 1037. In relation to employment terminations it established a four-step disciplinary procedure which included a verbal warning, a written performance warning, a letter of reprimand, and a notice of dismissal. 147 Ariz. at 382, 710 P.2d at 1037.

The handbooks and manuals submitted in *Leikvold* and *Wagenseller*, therefore, were broader and more detailed than the excerpts offered by Plaintiffs.

Perhaps most importantly, neither *Leikvold* nor *Wagenseller* involved a written employment agreement purporting to memorialize an at-will employment contract. *See Goodman v. Brown & Williamson Tobacco Corp.*, 891 F.Supp. 505, 508 (D.Ariz. 1993) ("[N]either Leikvold nor Wagensel-

ler involved express at-will employment agreements. . . . Thus, the courts' analysis involved whether an implied at-will employment agreement could be superseded by contrary express provisions in employee manuals.").

■ Almada and Allstate entered into a written employment contract in 1967 which Almada conceded to be for at-will employment. (DSOF, Exhibit A, at 26). Either party was entitled to end the employment agreement simply by mailing a notice to the other party. (DSOF, Exhibit B, at 9). The *Leikvold* rule that implied, at-will employment terms may be altered by policy manuals "was not intended to supplant the ability of parties to enter into written contracts governing their employment relationship." *Goodman*, 891 F.Supp. at 510. *See also Bernard v. Rockwell Int'l Corp.*, 869 F.2d 928, 932 (6th Cir.1989) ("[A] jury could not reasonably have concluded that the parties intended a three-year-old handbook of company policies and goals to modify an express provision of a written employment contract signed by the parties.").

For the reasons discussed, Almada was an at-will employee and could be terminated without good cause.

*Good Cause Termination*
*& Good–Faith Belief*

Almada was an at-will employee who could be terminated for good cause or no cause and nothing in the record indicates that Almada was terminated for an improper reason. Accordingly, whether Allstate is able to prove that Almada actually engaged in sexual harassment need not be resolved.

■ However, assuming arguendo that Almada's at-will status was altered by the policy manuals and he could only be fired for good cause, for the reasons discussed

below, Allstate possessed the requisite good-faith belief that good cause existed.

When an employer seeks to terminate an employee who may only be terminated for good cause, a question presented is whether the employer's good-faith belief that the employee engaged in misconduct is sufficient or the employer must have actual proof of the employee's guilt before terminating the employee. These competing standards are the "good-faith" standard and the "actual-guilt" standard. The good-faith standard was recently articulated by the California Supreme Court in *Cotran v. Rollins, Hudig, Hall Int'l, Inc.,* 17 Cal.4th 93, 69 Cal.Rptr.2d 900, 948 P.2d 412 (1998). The "actual-guilt" standard was previously articulated by the Michigan Supreme Court in *Toussaint v. Blue Cross & Blue Shield,* 408 Mich. 579, 292 N.W.2d 880 (1980).

■ Under the good-faith standard, an employer's decision to terminate an employee is proper if the employer had a good-faith belief, supported by substantial evidence, that the employee engaged in prohibited conduct. 948 P.2d at 421–22. Under a *Toussaint* analysis, an employer's decision to terminate an employee for good cause is improper unless a jury finds that the employee actually violated the employer's policy. 292 N.W.2d at 897. The good-faith belief of the employer is irrelevant. 292 N.W.2d at 896–97.

■ Almada argues that the *Toussaint* actual-guilt standard should apply; Allstate maintains that the *Cotran* good-faith standard applies. The parties agree that this issue has not been addressed by Arizona courts. Where an issue of state law is unsettled, a federal court should apply the rule that it believes the state supreme court would adopt if faced with the same issue. *See Arizona Electric Power Cooperative, Inc. v. Berkeley,* 59 F.3d 988, 991 (9th Cir.1995).

■ The Court adopts the good-faith standard recently articulated by the California Supreme Court in *Cotran,* rather than the actual-guilt standard articulated by the Michigan Supreme Court in *Toussaint.* Although *Toussaint* has been followed by some jurisdictions, the good-faith standard articulated in *Cotran* appears to be the majority rule. *See Cotran,* 69 Cal. Rptr.2d 900, 948 P.2d at 420; *Logan v. Bennington College Corp.,* 72 F.3d 1017, 1024 (2nd Cir.1995); *Chrvala v. Borden, Inc.,* 14 F.Supp.2d 1013, 1017 (S.D.Ohio 1998); *Maietta v. UPS,* 749 F.Supp. 1344, 1362 (D.N.J.1990); *Southwest Gas Corp. v. Vargas,* 111 Nev. 1064, 901 P.2d 693 (1995); *Baldwin v. Sisters of Providence, Inc.,* 112 Wash.2d 127, 769 P.2d 298 (1989) (*en banc* ); *Fleming v. Kids and Kin Head Start,* 71 Or.App. 718, 693 P.2d 1363, 1364–65 (1985). Furthermore, the *Cotran* approach has more to commend it. In practice, the actual-guilt standard would convert the workplace into an "adjudicatory arena." *Cotran,* 69 Cal.Rptr.2d 900, 948 P.2d at 421.

■ Using the *Cotran* analysis, the question is whether the factual basis on which the employer concluded that a dischargeable act had been committed was "reached honestly, after an appropriate investigation and for reasons that are not arbitrary or pretextual." *Cotran,* 69 Cal. Rptr.2d 900, 948 P.2d at 421. Good-faith is defined as "a reasoned conclusion ... supported by substantial evidence gathered through an adequate investigation that includes notice of the claimed misconduct and a chance for the employee to respond." 69 Cal.Rptr.2d 900, 948 P.2d at 422. Allstate has met this burden. After Allstate conducted a full investigation, gathered evidence, and interviewed witnesses, it concluded that Almada had engaged in sexual harassment.

In support of its motion for summary judgment, Allstate submitted its Corporate Security Investigation Report, excerpts of Anderson's deposition, as well as other supporting documents. Because the issue is whether Allstate's belief that Almada engaged in sexual harassment was objectively reasonable, consideration of hearsay evidence is appropriate.

No reasonable juror could find that Allstate lacked a good-faith belief that Almada engaged in sexual harassment. Summary judgment is appropriate.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED.**

**IT IS FURTHER ORDERED** that this action is **DISMISSED.**