2003 WY 38

**LIFE CARE CENTERS OF AMERICA, INC., d/b/a Westview Health Care Center, Appellant (Defendant),**

v.

**Margo DEXTER, Appellee (Plaintiff).**

No. 02–42.

Supreme Court of Wyoming.

March 17, 2003.

Kate M. Fox and Kathleen G. Healy of Davis & Cannon, Cheyenne, Wyoming, Representing Appellant.

Barbara A. Baker, Sheridan, Wyoming, Representing Appellee.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1] Life Care Centers of America, Inc. d/b/a Westview Health Care Center (Life Care) appeals from a judgment entered in favor of Margo Dexter after a trial to the court on her claims for breach of employment contract and breach of the implied covenant of good faith and fair dealing. We hold the trial court incorrectly applied *Sanchez v. Life Care Centers of America, Inc.*, 855 P.2d 1256 (Wyo.1993), to find the employee handbook created an implied contract as a *matter of law.* However, under the circumstances of this particular case and for purposes of deciding the other issues presented, we will assume the trial court made a factual finding that the employee handbook was an implied contract.

[¶ 2] We further hold the trial court's findings were insufficient to support its determination that Life Care breached the employment contract. The judgment contains no finding on the issue of whether cause existed to terminate Ms. Dexter's employment without following the progressive discipline procedures. Under the terms of the implied contract, that finding was essential

* Chief Justice at time of expedited conference

for a determination on the breach of contract claim. Therefore, we remand for additional findings on that issue. Finally, we hold there was insufficient evidence of a special relationship of trust and reliance to support judgment for Ms. Dexter on the breach of implied covenant claim and reverse that portion of the trial court's judgment.

## ISSUES

[¶ 3] Life Care presents the following issues:

(1) Applying correct principles of interpretation of an ambiguous contract to an employee handbook with an inconspicuous disclaimer, is the contract of employment at-will?

(2) Was the trial court's finding that cause for termination did not exist clearly erroneous?

(3) Was there any basis for finding a breach of the covenant of good faith and fair dealing when (a) there was no special relationship and (b) the plaintiff was not deprived of any benefits to which she was entitled?

Ms. Dexter restates the issues as follows:

1. Whether a contract for employment existed.

2. Whether sufficient evidence was presented for the fact finder to determine that the contract for employment had been breached by the employer.

3. Whether sufficient evidence was presented for the fact finder to determine that the employer breached the implied covenant of good faith and fair dealing.

## FACTS

[¶ 4] Life Care employed Ms. Dexter as the activities director in its nursing center in Sheridan for nearly six years. When Ms. Dexter was hired, Life Care gave her a copy of its employee handbook containing personnel policies, practices, and procedures for the nursing center. The handbook was identical to the one considered in *Sanchez*, 855 P.2d

1256. On June 30, 2000, Life Care terminated Ms. Dexter's employment.

[¶ 5] Ms. Dexter filed a complaint against Life Care alleging claims for breach of contract and breach of the implied covenant of good faith and fair dealing. She claimed the handbook created a contract, giving her the right to continuing employment unless her employment was terminated for cause and in accordance with the progressive discipline procedures. She claimed Life Care breached the contract and the implied covenant of good faith and fair dealing by terminating her employment without cause and in violation of the progressive discipline procedures.

[¶ 6] Life Care answered the complaint and, after conducting discovery, moved for summary judgment claiming Ms. Dexter was an at-will employee; there was no contract because Ms. Dexter did not read or rely on the handbook; and, even if there was a contract, there was no breach of contract and no breach of the implied covenant of good faith and fair dealing. After a hearing, the trial court denied Life Care's motion finding issues of fact existed on both the breach of contract claim and the claim for breach of the implied covenant. The case proceeded to trial on October 18 and 19, 2001, and, on November 7, 2001, the trial court issued a decision letter finding Life Care had breached Ms. Dexter's employment contract and the implied covenant of good faith and fair dealing and awarding $24,276 in damages to Ms. Dexter. The trial court entered judgment on November 26, 2001, in accordance with its decision letter.

## STANDARD OF REVIEW

[¶ 7] We review the trial court's conclusions of law *de novo*. *Principal Life Insurance Company v. Summit Well Service, Inc.*, 2002 WY 172, ¶ 20, 57 P.3d 1257, ¶ 20 (Wyo.2002); *Polo Ranch Company v. City of Cheyenne*, 969 P.2d 132, 136 (Wyo. 1998). The trial court's findings of fact are subject to the clearly erroneous standard:

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Fremont Homes, Inc. v. Elmer*, 974 P.2d 952, 958 (Wyo.1999) (citations omitted); *see also Jessen v. Jessen*, 2002 WY 33, ¶ 7, 41 P.3d 543, ¶ 7 (Wyo.2002). Also, in reviewing a trial court's findings of fact,

> we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law.

*Kendrick v. Barker*, 2001 WY 2, ¶ 12, 15 P.3d 734, ¶ 12 (Wyo.2001). We affirm the trial court's findings if there is any evidence to support them. *Capshaw v. Schieck*, 2002 WY 54, ¶ 27, 44 P.3d 47, ¶ 27 (Wyo.2002).

## DISCUSSION

### A. Breach of Contract

#### 1. *Existence of a contract*

[¶ 8] Life Care alleges error in the trial court's application of *Sanchez*. In *Sanchez*, the employee appealed from an order granting summary judgment for the employer based on the finding that the disclaimer contained in the same handbook at issue here was conspicuous. Reversing the summary judgment, this court said: "[W]e determine that the disclaimer was not physically conspicuous and its contents were ambiguous in that there was language that inferred that Life Care intended to modify the at-will employment to an employment which could only be terminated for cause." 855 P.2d at 1259. We said further:

The meaning and effect of the employment relationship in this case, a mixed question of law and fact, remains unresolved. Therefore, we must reverse summary judgment. The case is remanded to the trial court for determination of whether the employee handbook modified the employment relationship from one terminable at will to one terminable only for cause.

*Id.* at 1259–60. Despite this court's holding that the handbook was ambiguous, making it subject to an interpretation allowing termination only for cause and in accordance with specified procedures, Life Care made no changes to the handbook after *Sanchez* was decided.[1] Thus, under *Sanchez* and subsequent cases,[2] the question of whether the handbook at issue in this case created an implied contract was factual and was to be resolved by the trier of fact. The trial court's initial task in the present case was, therefore, to make a factual finding as to whether, given the ambiguity created by the inconspicuous disclaimer, the handbook created an implied in fact employment contract providing employees could be discharged only for cause and in accordance with the progressive discipline procedure.

[¶ 9] Life Care asserts that, contrary to this court's directive that interpretation of the handbook was a question of fact, the trial court in this case interpreted *Sanchez* as holding the handbook was an implied contract *as a matter of law*. Thus, Life Care contends the trial court's conclusion that the handbook was a contract was reached without the independent analysis or fact-finding required by *Sanchez*. Life Care's contentions are borne out by the trial court's findings of facts pertaining to *Sanchez* and the implied contract issue:

5. [The] Wyoming Supreme Court has had the occasion to rule on the sufficiency of this same Defendant's "disclaimer" language in the handbook given to Plaintiff in *Sanchez v. Life Care Centers*, 855 P.2d 1256 (Wyo.1993). The case held the Employee Handbook (same as the language herein) "... disclaimer was not physically conspicuous and its contents were ambiguous in that there was language that inferred that Life Care intended to modify the at-will employment to an employment which could only be terminated for cause." (p. 1259).

6. Plaintiff's Employee Handbook herein (Ex. I) thus created an expectation that employment will not be terminated except for cause and resulted in an implied contract of employment that overcame the at-will employment presumption of this state.

From these findings, it appears the trial court incorrectly read *Sanchez* as holding the handbook created an implied contract as a matter of law. That was not the holding in *Sanchez*, and the trial court's finding to that effect was in error. However, under the particular circumstances of this case and for purposes of deciding the remaining issues raised on appeal, we will assume the trial court made a factual finding that the handbook created an implied employment contract. See *Springer v. Blue Cross and Blue Shield of Wyoming*, 944 P.2d 1173, 1176 (Wyo.1997), for a similar outcome—the trial court assumed, without deciding, that the handbook was a contract; on appeal, this court began its consideration of the breach of contract issue from that same premise.

### 2. *Breach of contract*

[¶ 10] Life Care alleges the trial court found there was no cause for termination and that finding was clearly erroneous. In reviewing the decision letter and the judgment, we note the trial court made no finding on whether Life Care had cause to terminate Ms. Dexter's employment. The only findings appearing in the judgment on the issue of cause are:

---

1. It is of some concern to this court that Life Care did nothing to resolve the ambiguity after *Sanchez*, thereby leaving open the possibility of future litigation surrounding the meaning of its handbook and the employment relationship. Had Life Care amended the handbook to clarify employment was at will, if that is what it intended, this case likely would not be before us.

2. See, e.g., *Ormsby v. Dana Kepner Co. of Wyo. Inc.*, 997 P.2d 465 (Wyo.2000), where the court held the question of whether an ambiguous handbook results in an implied contract of employment is one of fact and not of law.

13. Plaintiff's "Termination Report" (Exhibit A1) listed "Lack of effort/unsatisfactory performance" as the reason for discharge.

14. Plaintiff's "personnel file" that existed at the time of her termination did not contain certain documentation Defendant claims supports "for cause" termination including Exhibits A5, A10, A15–A17, A45, A82 and A83.[3] Zerwas admitted items were inserted into the file after the termination but also testified the items were created before Plaintiff's termination.

15. Exhibits A3 and A4[4] were not discussed with Plaintiff prior to termination. (Zerwas testimony).

16. Defendant did not prove by a preponderance of [the] evidence that Plaintiff falsified any records. (Zerwas and Horton testimony).

17. Trial evidence does not allow the Court to conclude that the high turnover rate in Plaintiff's department was Plaintiff's fault. (Exhibit B).

18. Defendant did not follow its policies regarding "progressive stages of disciplinary procedures" when *terminating Plaintiff* (see Exhibit I, Employee Handbook sections on Discipline and Termination and Disciplinary Procedures). Hence, Defendant breached the implied covenant of good faith and fair dealing.

Thus, although the trial court made a finding that Life Care did not follow the progressive discipline procedures in terminating Ms. Dexter's employment, it did not make a similar finding on whether cause existed for the termination.

██ [¶ 11] Ordinarily, in implied employment contract cases, a breach of contract is established by the employer's failure to follow the procedures contained in the hand-

book, by a showing there was no cause for termination, or by both. In this case, the terms of the handbook made a factual finding on cause essential. The "Disciplinary Procedures" provision of the Life Care handbook provided as follows:

The nursing center has no desire to discipline any associate. Good management, however, demands that certain procedures are followed to correct or eliminate problems, since they can and do affect patient care. It is our assumption that most offenses are committed without forethought or destructive intent. However, a series of minor infractions suggests a continuing problem, and must be viewed as a source of major concern. The nursing center may, depending on the severity of the offense terminate an associate after the first offense. Generally, though, an associate will be subject to the following stages of progressive discipline:

1. First written warning.

2. Second written warning.

3. Suspension without pay, documented in file pending investigation. If investigation revealed no such offense occurred, the associate will be paid for the suspension period, will receive a formal apology from administration, and will have the third offense and notice of suspension stricken from his/her personnel file.

4. [Same as 3 except "fourth offense" plus the following:] If the investigation substantiates the offense, the associate will be terminated.

*This will be our usual and preferred process for administering discipline. However, conduct of any type which causes the center to lose confidence in your ability to perform adequately your*

---

3. Exhibit A5 is a request to schedule a doctor's appointment for a resident with a handwritten note by Life Care's executive director, Jean Zerwas, at the bottom indicating Ms. Dexter failed to make the appointment until three weeks after the request was made. Exhibit A10 is an application for employment with a handwritten note by Ms. Zerwas stating Ms. Dexter hired a dietary employee without discussing it with the dietary supervisor. Exhibits A15–A17 concern the resignation of an employee over alleged falsification of records by Ms. Dexter. Exhibit A45 documents

an employee's resignation over promises allegedly made and not kept by Ms. Dexter concerning the employee's work schedule. Exhibits A82 and A83 concern a grievance filed by Ms. Dexter about an incident with another employee.

4. Exhibit A3 is a comment form reflecting Ms. Dexter failed to deliver medical records to physicians' offices. Exhibit A4 documents allegations of inappropriate behavior by Ms. Dexter toward a former employee and a resident.

*assigned job may result in immediate discharge.*

(Emphasis added.)

[¶ 12] Given these provisions, upon finding Life Care failed to follow the progressive discipline procedures, the trial court had to determine whether there was cause for immediate discharge under the terms of the employment contract. That is, the trial court had to determine whether the evidence supported a determination that Life Care complied with the contract terms when it discharged Ms. Dexter without following the usual steps of progressive discipline under the lost confidence provision of the policy. The trial court made no such factual finding, and, without it, the judgment cannot stand. Therefore, we remand the case to the trial court for additional findings of fact on whether, under the terms of the handbook, Life Care had cause to terminate Ms. Dexter's employment without following the progressive discipline procedures.

[¶ 13] In making additional findings, the trial court will need to consider the terms of the handbook in light of the evidence presented by Life Care that it had concerns about Ms. Dexter besides those related to falsification of records and high turnover—the two concerns the trial court addressed in its findings of fact. Life Care presented evidence that Ms. Dexter failed to promptly deliver medical records; exhibited poor management skills; failed to improve after being counseled for poor work performance; and treated residents, their families, and other employees rudely. The trial court's findings addressed none of these concerns, making it difficult for this court to determine whether the findings supported a conclusion that Life Care did not have cause to terminate Ms. Dexter's employment under the terms of the handbook and thereby breached the employment contract.

[¶ 14] Against the evidence presented by Life Care, the trial court will need to weigh the evidence presented by Ms. Dexter to support her claims that the reasons given for her discharge were pretextual and Life Care's executive director took a personal dislike to her, terminated her employment without cause, and attempted to justify these actions by later adding supporting documentation to her personnel file. The trial court also will need to consider the evidence presented by Ms. Dexter that the complaints lodged against her were not credible and, in some instances, were not discussed with her. Only with factual findings as to these matters can the trial court determine whether Life Care had cause to terminate Ms. Dexter's employment under the terms of the handbook without following the progressive discipline procedures.

[¶ 15] In addition to applying the terms of the handbook in determining whether there was cause for termination, we also ask the trial court to apply the good faith standard for review of employer firing decisions applied by the majority of other jurisdictions that have addressed the issue. *Cotran v. Rollins Hudig Hall International, Inc.*, 17 Cal.4th 93, 69 Cal.Rptr.2d 900, 948 P.2d 412 (1998); *Almada v. Allstate Insurance Co., Inc.*, 153 F.Supp.2d 1108 (D.Ariz. 2000), *aff'd*, 285 F.3d 798 (9th Cir.2002); *Southwest Gas Corporation v. Vargas*, 111 Nev. 1064, 901 P.2d 693 (1995). Under this standard, the question to be resolved by the fact finder is not, " 'Did the employee *in fact* commit the act leading to dismissal?' " *Cotran*, 69 Cal.Rptr.2d 900, 948 P.2d at 421–22; *see also Almada*, 153 F.Supp.2d at 1114. Rather, it is, " 'Was the factual basis on which the employer concluded a dischargeable act had been committed reached honestly, after an appropriate investigation and for reasons that are not arbitrary or pretextual?' " *Id.* "Cause" is defined under this standard as

fair and honest reasons, regulated by good faith on the part of the employer, that are not trivial, arbitrary or capricious, unrelated to business needs or goals, or pretextual. A reasoned conclusion, in short, supported by substantial evidence gathered through an adequate investigation that includes notice of the claimed misconduct and a chance for the employee to respond.

*Cotran*, 69 Cal.Rptr.2d 900, 948 P.2d at 422. Wyoming has not previously adopted this standard for reviewing employer termination decisions. We do so now, with one slight variation. Under the standard applicable in

Wyoming, notice and an opportunity to respond must be shown in implied employment contract cases only when the express terms of the implied contract so provide. Recognizing that there may be circumstances where notice and an opportunity to respond are not practicable, we decline to impose such a requirement in all termination cases arising out of an implied employment contract.

[¶ 16]   If, in applying this standard to the evidence presented, the trial court finds that Life Care did not have fair and honest reasons for terminating Ms. Dexter's employment but rather its reasons were trivial, arbitrary or capricious, unrelated to business needs, pretextual or unsupported by substantial evidence gathered through an adequate investigation and, if required by the contract, after notice to Ms. Dexter and an opportunity for her to respond, judgment for Ms. Dexter on the breach of contract claim must stand.   If, however, the trial court finds, based upon the evidence, that Life Care had fair and honest reasons for the termination and those reasons were supported by substantial evidence gathered through an adequate investigation that included, if required by the handbook, notice to Ms. Dexter of the claimed misconduct and a chance for her to respond, judgment for Ms. Dexter on the breach of contract claim cannot stand.

[¶ 17]   Because we remand to the trial court for additional findings on whether cause existed to support the termination, it is necessary to address two other claims presented by Life Care which have relevance to the breach of contract claim.   First, Life Care contends error occurred when the trial court improperly placed the burden on the employer to prove Ms. Dexter falsified records.   The trial court found: Life Care "did not prove by a preponderance of evidence that [Ms. Dexter] falsified any records."

[¶ 18]   In an employment contract case, the plaintiff has the burden of proving the employer breached the employment contract.   In this case, Ms. Dexter had the burden of proving Life Care terminated her employment without cause and without following the handbook procedures.   Once she met that burden, the burden shifted to Life Care to present contrary evidence showing that, in fact, there was cause for termination, including evidence to support its contention she was fired for falsifying documents.   Although the trial court's finding may be inartfully worded, suggesting Life Care had the initial burden of proof on the issue of cause for termination, that finding could likewise be read to mean Life Care failed to come forward with evidence rebutting Ms. Dexter's evidence, thus allowing her to carry her burden of proof.   We find any error in this regard harmless under the circumstances.

[¶ 19]   Life Care also contends error occurred when the trial court refused to allow testimony concerning complaints from other employees and residents to establish Ms. Dexter's performance was unsatisfactory.   Finding substantial evidence of employee complaints concerning Ms. Dexter was introduced despite the trial court's ruling on the hearsay objection, we hold any error in that ruling was harmless.   During cross-examination of Jean Zerwas, Life Care's executive director, the following exchange occurred:

Q   ... You mentioned that Ms. Dexter had a negative attitude.   Was she rude?

A   It was frequently reported to me that Margo was rude.

Q   And you received complaints—did you receive complaints from activity staff that Margo Dexter was rude to them?

A   Yes, I did. . . .

Q   Who did you receive those complaints from?

A   Bev Patterson.   I'm drawing a blank.   Are those names—is that list in here that I could look at?

At this point, a list containing the names of eleven women who worked as aides in the activity department was admitted into evidence.   The witness read the names listed on the exhibit, and the following exchange occurred:

Q   They all complained to you about Margo's treatment?

A   Yes.

[Hearsay objection sustained.]

Q   Did you receive complaints from [Life Care]'s activity staff about Margo's abrasiveness?

A   Yes, I did.

. . . .

Q   Did you receive this letter?

A   Yes, I did.   And when I went to talk to her about it, she just said, "Margo doesn't like me."

[Hearsay objection sustained.]

Q   Did you speak to Rosa about this— the incident that's documented in A–43, 42 and 43?

A   Yes, I did.

Q   And did she believe that Margo was rude to her?

[Hearsay objection sustained.]

Q   I'd like you now, please, to turn to Exhibit A–46.

Do you recognize that document?

A   Yes, I do.

Q   What is it?

A   It's a letter that was written to me by Valerie Whyard, who was activity aide. And I received this in the mail after she had terminated her employment.

Q   Is it fair to say that the substance of this complaint was that Ms. Whyard thought that she was being given inconsistent directions by her supervisor?

A   Yes.

. . . .

Q   Did you receive complaints from the staff members outside of the activity department about Margo?

A   Yes.

Q   Did Kenny Custis ever complain to you about Margo?

[Hearsay objection overruled.]

A   Yes.

Q   And what was the substance of his complaint?

[Hearsay objection sustained.]

Q   Did Carla Blatchford complain to you about Margo Dexter?

A   Yes.

Q   Did Nita Hoffer complain to you about Margo Dexter?

A   Yes.

Q   Did John Johnston [complain] to you about Margo Dexter?

A   Yes.

Q   Did all of these staff members complain to you about Margo Dexter's treatment of them?

A   Yes.

[¶ 20]   In addition to this testimony, there was other testimony from Ms. Zerwas concerning alleged complaints by residents or other employees about Ms. Dexter.   Life Care also was allowed to introduce exhibits documenting complaints from others concerning Ms. Dexter.   Finally, Life Care called five witnesses to testify concerning their experiences in working with Ms. Dexter.   Under these circumstances, any error that occurred in the trial court's refusal to allow the proposed testimony was harmless.

## B.   Breach of the Implied Covenant of Good Faith

[¶ 21]   The trial court also found Life Care breached the implied covenant of good faith and fair dealing by failing to follow the progressive discipline procedures contained in the handbook when terminating Ms. Dexter's employment.   "[A]ll contracts of employment contain an implied covenant of good faith and fair dealing." *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211, 220 (Wyo.1994).   However, a duty giving rise to tort liability for breach of the implied covenant exists only in rare and exceptional cases.   *Id.* at 221.   In order for a duty to arise, there must be a showing of a special relationship of trust and reliance between the employee seeking to recover and the employer.   *Id.* "Trust and reliance may be found by the existence of separate consideration, common law, statutory rights, or rights accruing with longevity of service." *Id.*

[¶ 22]   As evidence of a special relationship, Ms. Dexter points to the fact that she was employed with Life Care for nearly six years.   In *Terry v. Pioneer Press, Inc.,* 947 P.2d 273, 278 (Wyo.1997), the court held longevity of service for nearly six years, without more, was insufficient to establish a special relationship.   Usually, when a special

relationship based on long-term employment is found sufficient to support a cause of action, it is *coupled with* a discharge calculated to avoid employer responsibilities to the employee, such as payment of benefits. *Trabing v. Kinko's, Inc.*, 2002 WY 171, ¶ 23, 57 P.3d 1248, ¶ 23 (Wyo.2002); *Terry*, 947 P.2d at 278. Ms. Dexter does not claim, nor does the evidence suggest, her discharge was calculated to avoid payment of benefits owed to her. Absent such a claim, and without proof of any other factors giving rise to a special relationship, Ms. Dexter's claim must fail. Without a special relationship, no duty exists on Life Care's part, and, without a duty, there can be no breach. *Springer*, 944 P.2d at 1178.

[¶ 23] Just as Ms. Dexter's six years of service is insufficient to establish a claim for breach of the implied covenant, so is the trial court's finding insufficient that Life Care failed to follow the progressive discipline procedures when terminating Ms. Dexter's employment. Regardless of whether policies were or were not followed, there must be proof of a special relationship of trust and reliance to proceed on a claim for breach of the implied covenant. The claim that a contract existed and it was breached, without more, is insufficient to establish the required special relationship. Therefore, the trial court's conclusion that Life Care breached the implied covenant of good faith and fair dealing was clearly erroneous.

## CONCLUSION

[¶ 24] We hold as follows:

1. The trial court incorrectly applied *Sanchez* as holding that the Life Care handbook created an implied contract as a matter of law. Whether the handbook created an implied contract is, under *Sanchez*, a question of fact. For purposes of resolving this appeal, however, we have assumed the trial court made a factual determination that the handbook created an implied contract.

2. The trial court's findings of fact were insufficient to support the determination that Life Care breached the employment contract. We remand to the trial court for additional findings of fact on

whether there was cause for termination. In making these findings, the trial court must apply the terms of the handbook and the good faith standard for review of employer termination decisions adopted herein.

3. Regardless of the outcome on the breach of contract claim, the judgment in favor of Ms. Dexter on the claim for breach of the implied covenant of good faith and fair dealing is reversed.

[¶ 25] Reversed and remanded.