**Sydney Nagel SHAUERS, Appellant (Defendant),**

v.

**The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF SWEETWATER, Appellee (Plaintiff).**

No. 87–91.

Supreme Court of Wyoming.

Dec. 4, 1987.

James R. Bell, of Murane & Bostwick, Casper, for appellant.

Thomas T. Zollinger, Sweetwater Co. Atty., Rock Springs, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

CARDINE, Justice.

The question here presented is who owns certain rights to computer software. The disputed computer programs were developed by appellant Sydney Shauers while she was working under an agreement with appellee Board of County Commissions of Sweetwater County (Board). The district court granted summary judgment in favor of the Board and entered a declaratory judgment proclaiming that the Board "exclusively owns all rights and interest" in the computer programs. Ms. Shauers contends that the court erred in granting summary judgment. She presents three issues on appeal. First, she contends that the court erred in concluding that she was an employee of Sweetwater County and that the County was therefore entitled to ownership of the software under the "works made for hire" doctrine. Second, she contends that the court erred in determining that she waived her rights to the software by a subsequent oral modification of the parties' written contract. Finally, she asserts that, even if the court was correct in concluding that the contract was modified, summary judgment was improper.

We reverse and remand.

In 1981, the Sweetwater Board of County Commissioners purchased an IBM computer system. IBM did not sell software which would perform the tasks required by the County, and the County had no employees who could develop that software. The commissioners asked IBM officials to recommend a computer programmer, and IBM highly recommended Sydney Shauers.

Ms. Shauers then met with the commissioners to discuss a possible working arrangement. Following this meeting, Ms. Shauers and the Board entered a written agreement which had been drafted by Ms. Shauers without the assistance of an attorney. In relevant part, the agreement contained the following provisions:

"1. *Services.* This agreement shall cover all assistance in the installation and use of data processing products by Sydney at Customer's request, including, but not limited to, special studies, programming and application design and development, systems analysis and design, conversion and implementation planning, and installation evaluation * * * .

\* \* \* \* \* \*

"5. *Confidentiality.* With respect to financial, statistical, and personnel data relating to Customer's business which is confidential, and is clearly so designated, and which is submitted to Sydney by Customer in order to carry out this agreement, Sydney will keep such information confidential, using care and discretion. However, Sydney shall not be required to keep confidential any data which is or becomes publicly available. *In addition, Sydney shall not be required to keep confidential any ideas, concepts, or techniques relating to data processing which are submitted or developed in the course of this agreement by Sydney or jointly by Sydney and Customer's personnel.*

\* \* \* \* \* \*

"*This agreement and any of the programs or materials to which it applies may not be assigned or otherwise transferred without prior written consent from Sydney.*" (Emphasis added.)

The parties signed the agreement, and Ms. Shauers began performing programming services for the Board. In the course of her relationship with the County, she developed several computer programs which are the subject of this dispute.

In 1982 or early 1983, Washakie County contacted Sweetwater County and expressed an interest in acquiring some of the software. The Sweetwater county commissioners then discussed the potential Washakie County sale with Ms. Shauers. According to Ms. Shauers, she told the Board that she did not object to the sale of the software to other public entities as long as she was notified before any sale was made. She also asserts that she told the Board she did not want private individuals or entities to gain access to the software, and she felt that she was entitled to any profits realized by the sale of the software in the private sector.

Following these discussions, Sweetwater County sold several of the programs to Washakie County. The sales were evidenced by written agreements which provided that

"Washakie will own said programs after the first year, however, Sweetwater reserves the right of ownership and said programs cannot be sold, leased, assigned or given away without the expressed written permission of Sweetwater."

Ms. Shauers hand delivered the programs to Washakie County. Following the sale to Washakie County, Sweetwater County sold programs to Albany County, Carbon County, and Dawson County, Montana on the same terms as the sale to Washakie County. All of the sales were made with the prior knowledge and consent of Ms. Shauers.

Both parties were satisfied with this state of affairs until Albert Vesco, Sweetwater County Clerk, told Ms. Shauers in 1985 that it was too bad she did not have any rights to the LANBASE program she had developed for Sweetwater County. Following this conversation, a dispute arose over ownership of the software. In December of 1985, Sweetwater County

filed a complaint in the district court seeking a declaratory judgment that it had "the sole proprietary right of ownership in the completed computer programs." In response, Ms. Shauers filed a counterclaim seeking a declaratory judgment proclaiming that she had "sole ownership of the proprietary rights and the source codes of all programs." She also sought damages for the County's denial of her ownership rights.

As the litigation progressed, both parties moved for summary judgment. The district court ultimately entered summary judgment for Sweetwater County, concluding that it owned the programs because Ms. Shauers was its employee under the works made for hire doctrine of the federal copyright laws. The court also concluded that the parties' written agreement had been modified by their subsequent discussions and actions so that Ms. Shauers had waived any rights to ownership of the programs. The court entered an order declaring that the Board "exclusively owns all rights and interest in all computer software programs developed while defendant was in plaintiff's employ." Ms. Shauers now appeals from the order for summary judgment and declaratory judgment.

Initially we must note that exclusive ownership of "all rights and interest" in the software is a rather broad concept. Presumably the effect of the declaratory judgment is that the Board owns *all* rights to the programs. This would include ownership of the material objects in which the programs are embodied and the right to use them. It might also include ownership of the ideas, concepts, processes used, and techniques incorporated into the programs. Finally, exclusive ownership of "all rights

and interest" would include the right to sell or otherwise transfer the programs. Because all of these rights are seemingly affected by the district court's order and because each requires a different analysis, we will address them separately.

■ Ownership of the material objects in which the programs are embodied is not to be determined by the works made for hire doctrine.[1] The doctrine merely provides a means for determining authorship and ownership of the rights comprised in a copyright. Ownership of the rights comprised in a copyright is different from ownership in the material objects in which the work is embodied.[2] Accordingly, the works made for hire doctrine does not determine who owns the physical objects in which the disputed computer programs are embodied.

Nor does the parties' written contract specifically address this issue. The undisputed evidence, however, does provide an indication of the nature of the transaction contemplated by the parties. In giving effect to the intention of the contracting parties, common sense and good faith are the leading characteristics of contract construction. *Busch Development, Inc. v. City of Cheyenne,* Wyo., 645 P.2d 65, 69 (1982). The Board's obvious and immediate purpose in entering the agreement was to obtain software to use for performing specific tasks. Ms. Shauers was hired to develop this software at the Board's expense. The relationship was intended to be a temporary one. Although the contract was one for services, the transaction also contained elements of a sale. The contract contains an express disclaimer of the warranties of merchantability and fitness for a particular purpose.

"Ownership of a copyright, or of any of the exclusive rights under a copyright, is distinct from ownership of any material object in which the work is embodied. Transfer of ownership of any material object, including the copy or phonorecord in which the work is first fixed, does not of itself convey any rights in the copyrighted work embodied in the object; nor, in the absence of an agreement, does transfer of ownership of a copyright or of any exclusive rights under a copyright convey property rights in any material object."

---

1. The works made for hire doctrine is codified in 17 U.S.C.A. § 201(b) (1978) which provides:

   "In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title [17 USCS §§ 101, et seq.], and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright."

2. 17 U.S.C.A. § 202 (1978) provides:

■ Nothing in the record suggests that Ms. Shauers retained the right to take back the copies of the programs which the Board had bought and paid for. In this limited sense of ownership of the programs, the record discloses no genuine issue of material fact. The Board owns the original copies of the programs that are in its possession and is entitled to use them in its own operations. To this extent, the Board was entitled to partial summary judgment.

■ The next aspect of ownership rights which is disputed in this case is ownership of the ideas, concepts and techniques incorporated into the programs. One of Ms. Shauers' principal concerns seems to be that if the Board "owns" the programs, she will be unable to utilize these ideas, concepts and techniques in her future work as a designer of custom software. This issue is specifically addressed in paragraph five of the contract, which provides:

"5. *Confidentiality.* With respect to financial, statistical, and personnel data relating to Customer's business which is confidential, and is clearly so designated, and which is submitted to Sydney by Customer in order to carry out this agreement, Sydney will keep such information confidential, using care and discretion. However, Sydney shall not be required to keep confidential any data which is or becomes publicly available. *In addition, Sydney shall not be required to keep confidential any ideas, concepts, or techniques relating to data processing which are submitted or developed in the course of this agreement by Sydney or jointly by Sydney and Customer's personnel."* (Emphasis added.)

This provision specifically defines the rights of the parties in this regard. The Board provided no evidence to indicate that Ms. Shauers modified or waived these particular rights. Consequently, no genuine

issue of material fact exists on this issue, and Ms. Shauers is entitled to partial summary judgment.

■ Finally, we turn to perhaps the most important aspect of ownership which is disputed by the parties—the right to transfer the programs. Paragraph nine of the written agreement provides:

*"This agreement and any of the programs or materials to which it applies may not be assigned or otherwise transferred without prior written consent from Sydney."* (Emphasis added.)

The effect of this provision is sufficiently clear to warrant no further discussion. The remaining issues are whether and to what extent the parties modified this provision by subsequent oral agreement and whether these questions were properly decided by summary judgment.

The parties to a written agreement may orally waive or modify their rights under the agreement.[3] *Huang International, Inc. v. Foose Construction Company,* Wyo., 734 P.2d 975, 978 (1987). The parol evidence rule does not apply to subsequent agreements. J. Calamari and J. Perillo, Contracts § 3–2(a) at 136 (3rd Ed.1987). It is not disputed that Ms. Shauers allowed the Board to sell programs to other public entities without her written consent. It is the effect of these transactions and any accompanying discussions which is disputed. The question is essentially one of intent. A party's intent is determined by an objective standard—what a reasonable person in the position of the other party would conclude from the party's manifestations. *Shrum v. Zeltwanger,* Wyo., 559 P.2d 1384, 1387 (1977).

■ In her interrogatory answers and deposition testimony, Ms. Shauers stated that when she discussed the sales with county officials, she told them that she must be notified before any sale of the

---

**3.** The written contract contained a provision to the effect that the contract terms superseded all other oral or written communications. Even if this provision could be interpreted to apply to subsequent oral communications, it would not achieve its purported effect. "Even where the contract specifically states that no non-written modification will be recognized, the parties may yet alter their agreement by parol * * *." *Wagner v. Graziano Construction Company,* 390 Pa. 445, 136 A.2d 82, 84 (1957), quoted in J. Calamari and J. Perillo, Contracts § 5–14(b) at 264 (3rd Ed.1987).

software to other counties. In addition, she stated that she made it clear to the county officials that she would not consent to any sale of the software to a private entity unless she received the profits of the sale. In response, the Board's witnesses testified in their depositions that they did not recall any specific discussion on these issues. When there is a conflict in evidence as to the existence or terms of an oral contract, a question of fact exists. *Jim's Water Service, Inc. v. Alinen,* Wyo., 608 P.2d 667, 669 (1980). Thus the record, in its present state, presents genuine issues of material fact concerning the right of transfer, and we must reverse and remand the case to the district court for further proceedings.

It should be observed that a resolution of this issue will determine the right of transfer only as between the parties to this case. If a party wishes to obtain greater rights which are "equivalent to any of the exclusive rights within the general scope of copyright," those rights may only be obtained by compliance with the Federal Copyright Act. 17 U.S.C.A. § 301 (1978).

Reversed and remanded for proceedings consistent with this opinion.