**Michael WOLIN, Special Personal Representative of Morris Wolin, Appellant (Defendant),**

v.

**William H. WALKER, Appellee (Plaintiff).**

**No. 91–189.**

Supreme Court of Wyoming.

April 28, 1992.

Bernard E. Cole and Donald A. Cole of Cole & Cole Law Firm, Cheyenne, for appellant.

Charles E. Graves of Graves, Santini & Villemez, P.C., Cheyenne, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

MACY, Justice.

Appellant Morris Wolin [1] appeals from the lower court's judgment which ordered him to pay $11,080 to Appellee William Walker for breach of a lease and which dismissed his counterclaim for unpaid rent.

We modify in part, reverse in part, and remand.

Wolin raises the following issues:

Did the district court err in failing to hold that the Appellee's waiver and conduct constituted an effective modification of the lease agreement as to the Appellant[']s continued possession of the apartment?

Did the district court err in calculating damages for the removal of the under-

ground storage tanks by ignoring the lease agreement provision setting forth said damages?

Did the district court err in failing to award damages to the Appellant for non-payment of rent for the months Appellee continued to occupy the leased premises?

Wolin owned what was once a Phillips 66 service station located at 601 East 16th Street in Cheyenne, Wyoming. He used the property as a part-time residence and as a used-car business known as Morris Auto Sales. The property consisted of a parking lot and a building. The building contained an office, an upstairs apartment, several service bays, and a garage/storage area. On September 15, 1986, Wolin leased the property to Walker for the purpose of establishing a new used-car business known as the Car Corral. The term of the lease extended from September 1, 1986, through August 31, 1991. The lease required a $2,000 security deposit and a monthly rental payment of $1,200. Wolin excepted the apartment and the garage/storage area from the leased premises for a period of one year from the date of the lease, or until September 1987.

Walker entered the premises in accordance with the lease and began operating his used-car business. The relationship between Walker and Wolin was generally amicable. Walker facilitated the liquidation of Morris Auto Sales' inventory by allowing the leftover cars to remain on the lot until they were sold or disposed of by Wolin. Wolin paid Walker a commission for the cars which he sold. Walker also accommodated Wolin by accepting installment payments from Wolin's previous customers and by helping him to gain entrance into the apartment on several occasions when he lost his keys. Wolin, in turn, allowed Walker to use his shop tools and covered one-half of the utility bills.

The relationship between Walker and Wolin became strained as time progressed. Wolin failed to relinquish possession of the apartment and garage/storage area after

1. Wolin filed his notice of appeal on July 15, 1991, and he died on January 7, 1992. Pursuant to W.R.A.P. 17.01, the court ordered that Mi-

chael Wolin, special personal representative of Morris Wolin, be substituted as the appellant.

one year as was required by the lease and continued to occupy the premises throughout the duration of Walker's tenancy. Wolin also persisted in purchasing used cars and offering them for sale from the Car Corral lot. Additionally, Wolin had the underground gasoline storage tanks removed from beneath the lot in February 1989, thereby disrupting Walker's use of the lot for a period of two weeks. Walker viewed Wolin's actions as intrusions upon his leasehold interest, and he sought a reduction in rent as compensation. When it became apparent that Wolin had no intention of honoring his request, Walker began withholding rent to offset his alleged damages. Wolin responded by serving Walker with a notice to quit for failure to pay rent. Walker complied with the notice to quit and vacated the premises on January 30, 1990.

Walker subsequently filed a complaint, seeking $35,000 in damages from Wolin for breach of the lease. Wolin answered and counterclaimed for unpaid rent and property damage. Following a bench trial, the district judge found generally for Walker, ordering Wolin to pay a total of $11,080 in damages and dismissing Wolin's counterclaim. The damages were composed of $2,000 for the return of the security deposit, $2,500 for lost profits during February 1989, and $6,580 (28 × $235) for hold-over rent from September 1987 to January 1990. Wolin appeals.

■ Wolin's first claim is that the trial court erred in awarding $6,580 to Walker as compensation for the twenty-eight months that he occupied the apartment and garage/storage area beyond September 1987. Wolin argues that Walker waived his right to possession of the apartment and the garage/storage area by allowing him to remain on the premises beyond the September 1987 deadline. Wolin contends that the waiver effectuated an unwritten modification of the lease which, in essence, extended his initial one-year exception of the apartment and the garage/storage area from the leasehold premises through January 1990. We disagree.

■ Leases are contractual in nature. *Automatic Gas Distributors, Inc. v. State*

*Bank of Green River*, 817 P.2d 441, 442 (Wyo.1991). They are, therefore, governed by the tenets of contract law. A basic tenet of contract law is that a written agreement, when unambiguous, controls the intent of the parties. *Bingham v. Boreing*, 799 P.2d 284, 285 (Wyo.1990); *True Oil Company v. Sinclair Oil Corporation*, 771 P.2d 781, 790 (Wyo.1989). The lease in the instant case was unambiguous as it related to the nature and extent of Wolin's right to occupy the premises. It provided:

Landlord leases to Tenant the North 116′ of West 20′ of Lot 8, and North 116′ of Lots 9, 10, and 11, Block 424, City of Cheyenne, Wyoming, being a commercial building at 601 E. 16th Street, Cheyenne, Wyoming, *with the exception that Landlord withholds unto himself the apartment and storage area located therein for a period of one year from the date of this lease.*

(Emphasis added.) The lease also provided:

All negotiations, considerations, representations and understandings between the parties are incorporated herein, and may be modified or altered only by agreement in writing between the parties.

Absent the waiver and modification asserted by Wolin, the lease entitled Wolin to occupy the apartment and garage/storage area only until September 1987, at which time he was to vacate the premises and turn complete possession over to Walker. As this was not done, we must determine whether a lease with a no-unwritten-modification clause may be modified orally or otherwise and, if so, whether the trial court erred in determining that the lease was not so modified.

■ This court has previously acknowledged that the parties to a written agreement may orally waive or modify their rights under the agreement. *Shauers v. Board of County Commissioners of County of Sweetwater*, 746 P.2d 444, 448 (Wyo.1987); *Huang International, Inc. v. Foose Construction Company*, 734 P.2d 975, 977–78 (Wyo.1987). We have fur-

ther indicated that an oral modification of a written agreement may be possible even when the agreement contains a no-unwritten-modification clause. *Shauers,* 746 P.2d at 448 n. 3. The party asserting that a written agreement was modified by the subsequent expressions or conduct of the parties must prove so by clear and convincing evidence. *See Huang International, Inc.,* 734 P.2d 975. The question of whether the alleged modification of the written agreement has been proved by the required quantum of evidence is one to be decided by the trier of fact. *Strate v. Cambridge Telephone Company, Inc.,* 118 Idaho 157, 795 P.2d 319, 323 (Ct.App.1990). We will not reverse the decision of the trier of fact unless that decision is clearly erroneous or contrary to the great weight of the evidence. *O's Gold Seed Company v. United Agri–Products Financial Services, Inc.,* 761 P.2d 673, 676 (Wyo.1988).

After hearing arguments, listening to witnesses, and examining the evidence, the trial judge determined that the parties remained bound by the express terms of their lease. He, therefore, ordered Wolin to pay $6,580 for occupancy of the apartment and garage/storage area from September 1987 to January 1990. Implicit in the trial judge's findings and order was the fact that Wolin failed to prove by clear and convincing evidence that the parties waived or modified the terms of their agreement, orally or otherwise.

Upon review of the record, we cannot say that the trial judge's determination was either clearly erroneous or contrary to the great weight of the evidence. The testimony, although conflicting, was certainly sufficient to warrant a conclusion that the parties did not waive or modify the lease terms. Walker testified that he repeatedly requested Wolin to either vacate the premises or, alternatively, reduce his rental obligation to compensate for Wolin's continued occupancy of the apartment and garage/storage area. Wolin corroborated Walker's testimony to the extent that the two men had discussed rent reduction. In light of this testimony, we fail to view the fact that Walker helped Wolin, a man in his eighties, in a variety of ways as constitut-

ing clear and convincing evidence of waiver or modification of the lease. The district court did not err in awarding $6,580 to Walker for Wolin's occupancy of the apartment and garage/storage area beyond September 1987.

■ We turn now to Wolin's second contention. Wolin argues that the trial judge erred in awarding $2,500 in damages to Walker for alleged lost profits resulting from the removal of the underground gasoline storage tanks. Wolin contends that the lease limited Walker's damages to a reduction in rent for the period of time during which the premises were untenantable. We agree.

In Article XI, Section 1 of the lease, the parties agreed upon the damages which would be available in the event unforeseen occurrences or governmental orders interfered with the physical possession of the leased premises. Article XI, Section 1 read as follows:

> If during the lease term, said premises are destroyed, injured or damaged by fire, the elements, or other cause not the act of negligence of the Tenant, so as to be unfit for occupancy or *if said premises are condemned, declared unsafe or directed rebuilt by a duly constituted governmental body,* this lease shall cease and terminate, and the Tenant shall have surrendered possession of the premises to the Landlord; provided, however, if the injury or damage to, or the condition of the premises is such that the Landlord can and does restore the premises or comply with the governmental order within sixty (60) days of the happening of such event, this lease shall not be terminated, but *the rent shall be suspended for that portion of the demised premises considered untenantable while such condition exists, and any rentals paid in advance and unearned shall be refunded.*

(Emphasis added.) The business interruption experienced by Walker in the instant case resulted directly from a governmental order. The State determined that the tanks were a source of groundwater con-

tamination and required that they be removed. The removal of the tanks disrupted Walker's physical possession of the leased premises for a two-week period. Therefore, absent some overarching consideration, the parties were bound by the terms of their agreement, and damages were limited to one-half of a month's rent, or $600.

Walker cites several cases which interpret the word "casualty" to argue that Article XI, Section 1 is inapplicable to the circumstances of this case. He asserts that the term "casualty" refers only to sudden mishaps, such as fire, flood, wind, and the like, which damage the leased premises. Even if we accept Walker's definition of the term "casualty," we fail to see how this would alter our interpretation of Article XI, Section 1 of the lease. The term "casualty" is nowhere employed in the substantive text of Article XI, Section 1. Article XI, Section 1 liquidated the damages recoverable under a broader set of circumstances than is encompassed in Walker's definition of the term "casualty." Article XI, Section 1 provided that the tenant's obligation to pay rent would be suspended for the period of time that the premises were temporarily untenantable due to (1) "fire, the elements, or other cause not the act of negligence of the Tenant"; or (2) governmental orders. The facts of the instant case fall well within the foregoing parameters.

■ We have recognized that contractual provisions which liquidate damages are valid and enforceable, unless the damages are punitive in nature or the provisions are contrary to public policy. *See Jessen v. Jessen*, 810 P.2d 987 (Wyo.1991); *Ray v. Electrical Products Consolidated*, 390 P.2d 607 (Wyo.1964); and *Studer v. Rasmussen*, 80 Wyo. 465, 344 P.2d 990 (1959). *See also* RESTATEMENT (SECOND) OF PROPERTY § 5.6 (1977). This court determines on a case-by-case basis whether or not a provision for liquidated damages is punitive in nature. *Marcam Mortgage Corporation v. Black*, 686 P.2d 575, 580–81 (Wyo.1984). A liquidated damages provision is construed as being punitive in

nature when the damages provided bear no reasonable relationship to the actual damages sustained. *See Walker v. Graham*, 706 P.2d 278 (Wyo.1985).

Nothing in the record substantiates a claim that Article XI, Section 1 damages were punitive in nature. Although argued by Walker on appeal, no evidence was presented to the trial court which would justify a conclusion that Wolin knew prior to entering into the lease with Walker that the tanks were fouling groundwater and that they had to be removed. Article XI, Section 1 appears to be nothing more, or nothing less, than the parties' good faith estimation of what would be fair in the event that the premises became untenantable under circumstances beyond their control. We see no reason why the provision should not be enforced as it is written. Therefore, we hold that the district court erred in awarding $2,500 to Walker for lost profits. Article XI, Section 1 of the parties' lease limited the damages recoverable for removal of the tanks to $600. The district court is hereby directed to enter judgment in favor of Walker, and against Wolin, for the adjusted amount of $9,180 ($11,080 minus ($2,500—$600)).

■ Wolin's final contention is that the trial court erred by dismissing his counterclaim for unpaid rent. He argues that the trial court acted inconsistently by awarding Walker a reasonable rental value of $235 per month through January 1990 while denying his claim for unpaid rent covering the same period of time. We agree.

Walker was obligated by the lease to pay a monthly rent of $1,200. The undisputed evidence before the trial judge was that Walker occupied the leased premises through January 30, 1990, and that he failed to pay rent for the months of December 1989 and January 1990. A dispute existed at trial, and continues to exist, concerning whether or not Walker paid rent for November 1989.

We perceive no reason in law or fact which would warrant the trial judge's recognition of Walker's possessory interest under the lease for the purpose of assess-

ing rent to Wolin while failing to acknowledge Walker's corresponding duty to pay rent to Wolin for the leased premises. The district court's judgment dismissing Wolin's counterclaim is reversed, with directions .that the amount of rent which Walker owes to Wolin, once determined, be offset against the $9,180 in damages awarded to Walker.

Modified in part, reversed in part, and remanded for proceedings consistent with this opinion.