2003 WY 147

**Larry KEEVER, Appellant (Defendant),**

v.

**PAYLESS AUTO SALES, INC.,**
**Appellee (Plaintiff).**

**No. 03–28.**

Supreme Court of Wyoming.

Nov. 18, 2003.

Representing Appellant: Guy Cleveland, Attorney at Law, Cheyenne, Wyoming.

Representing Appellee: No appearance.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1] Larry Keever purchased a car from Payless Auto Sales, Inc. (Payless) and agreed to make three monthly payments and a balloon payment to pay off the purchase price. He failed to make the scheduled balloon payment and instead continued to make monthly payments, which Payless accepted. However, he stopped making payments before paying the full amount required by the agreement. Payless sued Mr. Keever for damages pursuant to the agreement. Mr. Keever argued the contract had been modified by the conduct of the parties, but the district court .disagreed and awarded damages to Payless. We affirm the district court's judgment.

## ISSUES

[¶ 2] Mr. Keever presents the following issues: [1]

  I.  Whether the trial court's factual determination was clearly erroneous and/or contrary to the great weight of the evidence in that the contract between Defendant and Plaintiff was not modified by the payment and acceptance of monthly sums versus previously agreed lump-sum payment[?]

  II.  If the contract between the Plaintiff and Defendant is found modified, wheth-

---

1. The appellee did not file a brief in this matter.

er such modified contract needs to be reduced to writing with such writing or "modified contract" having to include required consumer credit disclosures[?]

III. If the "modified contract" between the parties needs to be in writing and contain the appropriate disclosures, whether the failure to do so renders the contract void as against public policy and/or void for illegality[?]

## FACTS

[¶ 3] In 1996, Mr. Keever purchased a 1991 Chevrolet Lumina van from Payless. He signed a Credit Sale Note/Disclosure/Security Agreement for the purchase price of $13,615.92, which incorporated a Chevrolet Geo as collateral. Pursuant to the contract, Mr. Keever was to make three monthly payments of $250.00 beginning November 1, 1996, and a balloon payment of $13,478.62 on or before February 11, 1997. The annual percentage rate on the contract was eighteen percent (18%). Mr. Keever never made the balloon payment, but continued to make monthly payments, which Payless accepted for over three years until early 2000. James Ditzel, owner of Payless, testified at trial he continued to "urge" Mr. Keever to make the balloon payment. After February 3, 2001, Mr. Keever stopped making payments to Payless despite the fact he still owed money on the contract.

[¶ 4] On October 31, 2001, Payless filed suit against Mr. Keever [2]. In response, Mr. Keever claimed Payless' acceptance of his monthly payments constituted a modification to the contract. Following a bench trial, the district court found the terms of the contract had not been modified, and "defendant simply chose not to make the payments as scheduled." The court also found the terms of the contract were properly disclosed, including the provision that late payments would increase the finance charge.

[¶ 5] This appeal followed.

2. The original complaint asked for judgment in the amount of $6,615.67; however, the complaint was later amended and requested judg-

## STANDARD OF REVIEW

[¶ 6] Our review of the trial court's factual determination that the terms of the Credit Sale Note/Disclosure/Security Agreement had not been modified is limited. Findings of fact will not be set aside unless the findings are clearly erroneous.

"When a trial court in a bench trial makes express findings of fact ..., we review the factual determinations under a clearly erroneous standard[.]" *Rennard v. Vollmar,* 977 P.2d 1277, 1279 (Wyo.1999). This court does not weigh the evidence *de novo*[.]

*Ruby Drilling Co. v. Duncan Oil Co.,* 2002 WY 85, ¶ 9, 47 P.3d 964, ¶ 9 (Wyo.2002).

[¶ 7] We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law. *Life Care Centers of America, Inc. v. Dexter,* 2003 WY 38, ¶ 7, 65 P.3d 385, ¶ 7 (Wyo.2003). We affirm the trial court's findings if there is any evidence to support them. *Id.* We accept the evidence of the prevailing party as true and give that party the benefit of all favorable inferences that can fairly be drawn from the evidence, while disregarding conflicting evidence. *Narans v. Paulsen,* 803 P.2d 358, 360 (Wyo. 1990). A reviewing court will not set aside the court's findings merely because it might have reached a different result. *Conner v. Board of County Commissioners, Natrona County,* 2002 WY 148, ¶ 23, 54 P.3d 1274, ¶ 23 (Wyo.2002). A finding can be "clearly erroneous" even though there is evidence to support it, if after a review of the entire record, the court "is left with the definite and firm conviction that a mistake has been committed." *Hammons v. Table Mountain Ranches Owners Association, Inc.,* 2003 WY 85, ¶ 12, 72 P.3d 1153, ¶ 12 (Wyo.2003).

## DISCUSSION

[¶ 8] Mr. Keever asserts the Credit Sale Note/Disclosure/Security Agreement he signed was modified by the subsequent conduct of the parties. The conduct he relies

ment in the amount of $12,300.51. During the bench trial, the parties agreed on a stipulated amount of $12,039.89.

upon is Payless' acceptance of his monthly payments after he failed to make the scheduled balloon payment. However, Mr. Keever chooses to ignore the evidence at trial that demonstrated Payless had no intention of modifying the contract, but instead, was simply accepting the late payments upon Mr. Keever's continued promises to make the balloon payment. On direct examination, Mr. Ditzel testified:

Q. Looking at this, in February, Mr. Keever was supposed to make that large balloon payment.... [D]id he actually make that payment in February?

A. No, he didn't.

Q. What did he do?

A. Just continue[d] to make payments looks like 250, 250, 250, then went to 300.

Q. So instead of making the balloon payment, he continued to make payments in the amount of $300 a month?

A. Yes.

Q. And those payments continued to accrue interest at the note rate?

A. Correct.

Q. And you accepted those payments?

A. I did.

Q. Why did you do that?

A. That's all I could get. In fact, we urged him to make that balloon payment but we were always given several excuses: the bonus check never came in; the refund check never came in, etcetera, etcetera. So over time, we just accepted what we could get.

Q. So that was a business decision you had to make?

A. Yes.

[¶ 9] Following his direct examination, Mr. Ditzel testified to the following on cross-examination:

A. ... I know that in my notes I continued to try to get the balloon payment and that he had made several promises on his—that when he got his bonus check, that he would pay the account off.

Q. And when it became, as you basically stated earlier, that it was apparent that that wasn't going to happen, did you feel compelled at that time to maybe have Larry come in and enter into a new contract?

A. No.

...

Q. Was there a reason why you did not? When it became apparent that Mr. Keever was not making that balloon payment, why did you not have him come in and execute a new contract?

A. We had a contract.

[¶ 10] Mr. Keever did not rebut Mr. Ditzel's testimony and provided no explanation for his failure to comply with the contract. He testified:

Q. Isn't it true you didn't comply with the terms of this note?

A. He wrote—yes.

Q. You didn't make the required payment of $13,000 and change in February, did you?

A. That's correct.

[¶ 11] Following the trial, the district court took the matter under advisement, and on November 19, 2002, issued a Decision Letter making the following findings:

Defendant argues that the contract ... was modified to include the $300 monthly payment term. Defendant asserts that the new terms should have been in writing and that he should have been given the finance disclosures required by law concerning the total amount he would have to pay.

The Court finds that the terms of the contract were not modified. Defendant simply chose not to make the payments as scheduled. The Court also finds that the required finance terms were disclosed, and the contract states that late payments will increase the finance charge that is paid.

Accordingly, the Court finds that Plaintiff should prevail ... and will be awarded the stipulated amount of $12,039.89.

[¶ 12] This Court has previously acknowledged that the parties to a written agreement may orally waive or modify their rights under the agreement. *Shauers v. Board of County Commissioners of County of Sweetwater,* 746 P.2d 444, 448 (Wyo.1987). They may do so even when the agreement contains a clause prohibiting non-written modifications. *Id.* at 448 n. 3. However, Mr. Keever does not contend the parties orally modified the contract. Rather, he argues the parties modified the contract through their course of conduct.

[¶ 13] Wyoming law is clear that the party asserting a written agreement was

modified by the subsequent expressions or conduct of the parties must prove so by clear and convincing evidence. *Ruby Drilling Co.,* ¶ 11. The question of whether the alleged modification of the written agreement has been proved by the required quantum of evidence is one to be decided by the trier of fact. *Id.*

[¶ 14] In order to prevail on appeal, Mr. Keever must overcome the onerous burden of persuading this Court that the district court's findings are clearly erroneous. *Maycock v. Maycock,* 2001 WY 103, ¶ 11, 33 P.3d 1114, ¶ 11 (Wyo.2001). Mr. Keever's only support for his argument that the trial court's findings were clearly erroneous is his version of the facts, which was soundly rejected by the district court. Simply reiterating those facts on appeal does not meet the clearly erroneous standard of review mandated by our jurisprudence. We understand that standard of review is a difficult one to meet; however, that is not without reason. The trial court had the opportunity to assess the witnesses' credibility. *Rossel v. Miller,* 2001 WY 60, ¶ 16, 26 P.3d 1025, ¶ 16 (Wyo. 2001). While the record indicates some evidence did exist regarding the parties' course of conduct which was inconsistent with the terms of the contract, other evidence clearly indicated Payless had no intention of modifying the contract. We must defer to the trial court's conclusion regarding the credibility of the witnesses and the persuasiveness of the evidence. *Id* at ¶ 18. The trial court heard testimony from three witnesses, admitted ten exhibits into evidence, and took the case under advisement for careful consideration. Mr. Keever presented no evidence to rebut Mr. Ditzel's affirmative testimony that Payless continued to urge Mr. Keever to make the balloon payment. Further, nothing else about the conduct of the parties indicates mutual assent to a new agreement, as Mr. Keever asserts.

[¶ 15] A contract modification requires the same mutual assent necessary for the formation of the initial contract. As stated by the Kansas Supreme Court:

It is well settled that the terms of a written contract may be varied, modified, waived, annulled or wholly set aside by any subsequently executed contract, whether such subsequently executed contract be in parol or in writing. *Gibbs v. Erbert,* 198 Kan. 403, 424 P.2d 276; *Bailey v. Norton,* 178 Kan. 104, 283 P.2d 400. One party to a contract cannot unilaterally change the terms thereof. *Modification requires the assent of all the parties to the contract. Their mutual assent is as much a requisite in effecting a modification as it is in the initial creation of a contract.*

*Fast v.Kahan,* 206 Kan. 682, 481 P.2d 958 (1971) (emphasis added). In this case, the trial court's finding that no such mutual assent existed is not clearly erroneous. Accepting as true the evidence of Payless, giving to Payless all favorable inferences and disregarding Mr. Keever's evidence as we are required to do, we find no error. Having failed to meet his burden, Mr. Keever must live with the bargain he struck. Because we find the contract was not modified, we do not consider the remaining two issues presented by Mr. Keever.

[¶ 16] Affirmed.